**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert ALBRIGHT, Defendant and Appellant.**

**No. 15618.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1987.

Decided Jan. 6, 1988.

Mark Smith, Asst. Atty. Gen., Roger A. Tellinghuisen, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Cynthia A. Howard, Northern Hills Public Defender's Office, Deadwood, for defendant and appellant.

MILLER, Justice.

Robert Albright (Albright) appeals a conviction of two counts of third-degree burglary. The jury acquitted him on a third count. We affirm.

## FACTS

In February of 1986, George McGee (McGee) went to the police in Sturgis, South Dakota (located in Meade County) with a box of fireworks allegedly stolen by Albright from Greg Abdallah (Abdallah). McGee stated that he had received them from Albright. McGee further informed the police that other stolen property was located in Albright's house. McGee advised that Albright had told him that he had taken items from the Spearfish Canyon Country Club (country club) and a Pamida store, both in Spearfish, South Dakota (located in adjoining Lawrence County).

Meade County authorities communicated this information to Lawrence County Deputy Sheriff Jim Charles (Charles), who then checked with Abdallah regarding the fireworks. Abdallah confirmed that some fireworks had been taken from his trailer in Spearfish. Charles further checked with the Spearfish Police Department and discovered that the country club had been broken into and several items taken (including a Pepsi clock, Coors mirror, champagne, and PA system). A photo had been taken of a shoe imprint with a unique pattern, which was discovered in the dust on the floor of the country club building. The next day, McGee identified the country club building to Charles as being the place where Albright had indicated he had stolen some property. At this point, Charles prepared an affidavit for a search warrant. Prior to executing this affidavit, Charles had received information regarding property stolen from Northern Hills Forest Products (Northern Hills) in June, 1985. A unique shoe imprint like that found at the country club was left on the dirt floor of Northern Hills. After learning of the Northern Hills burglary, Charles checked to see if any of the reported stolen property had been sold to any Rapid City pawn shops. Charles discovered that Albright had in fact sold some hoses and gauges, which Charles believed to have been stolen from Northern Hills, as the serial numbers on various items matched.

On February 20, 1986, a search warrant, based upon Charles' affidavit, was issued by Circuit Judge Warren G. Johnson. This search warrant listed six items that could be seized.[1] Those items listed were reported missing from the Pamida store and the country club. The search warrant failed to mention any items missing from Northern Hills.[2] The affidavit itself included items that were not listed in the search warrant.[3]

With search warrant in hand, Charles and various Meade County officers proceeded to Albright's residence in Sturgis to conduct a search for the stolen property. Deputy Charles testified at a motion hearing that Albright was first read a *Miranda* warning in his presence. However, Charles was not the officer who read the *Miranda* warning and did not remember precisely the responses of Albright. Charles testified that Albright accompanied the officers through the house and identified certain property that was stolen.

Albright testified at the motions hearing that he was upset and confused by finding four law enforcement officers at his house with a search warrant. He asserts that when the officers asked him to talk to them, he remembers saying "I'm being framed" and "If I am in trouble I want to see an attorney first." (Charles who was present at all times denies this.) Albright claims that the officers proceeded to go through his house and began to seize several items of property that were not stolen but which belonged to him or his father. At this point, Albright alleges, he became upset with the officers and began to point out items that were stolen in order to prevent the officers from taking his personal property.[4]

Once the search was completed, Albright was arrested and taken to the Meade Coun-

ty Jail. The following day, Charles interviewed Albright before transferring him to the Lawrence County Jail. At the beginning of this conversation, after he was again Mirandized, Albright stated that he was confused and that he needed help. Albright said his understanding of the situation was that, if he would cooperate, Charles would make sure he would receive the help he wanted. At this point, Albright proceeded to confess to the burglaries.

Albright was indicted on three counts of third-degree burglary. Count I was for the alleged burglary of the country club; Count II for the alleged burglary of Abdallah; and, Count III for the alleged burglary of Northern Hills. (The jury found him guilty of Counts I and III and acquitted him on Count II.)

Prior to trial, Albright filed various motions, including a motion to suppress confessions and a motion to exclude search warrant evidence. A hearing on these motions was held before Circuit Judge Scott C. Moses (since the trial judge (Johnson) had signed the search warrant). A memorandum opinion denying these motions was filed by Judge Moses. The memorandum decision specifically states that it contains findings of fact and conclusions of law. No separate findings and conclusions, other than this memorandum decision, were entered by Judge Moses. We insist on separate, appropriate, and specific findings of fact and conclusions of law in order to aid appellate review and "insure against speculation and conjecture." *State v. Bonrud*, 393 N.W.2d 785, 788 (S.D.1986); *State v. Hartley*, 326 N.W.2d 226 (S.D.1982); *State v. Janis*, 321 N.W.2d 527 (S.D.1982); *State v. Stumes*, 90 S.D. 382, 241 N.W.2d 587 (1976). Trial judges are cautioned to not give this directive slight shrift. Here, how-

---

**1.** These items included 1 Coors mirror, 1 Windsor mirror, 1 Pepsi clock, approximately 10 pair of tennis shoes marked with Pamida price tags, 1 22–calib. pistol and 3 rubber rafts.

**2.** Items known to be missing from Northern Hills included calipers, one OHM meter, tap and die set, one box of drill bits, acetylene hoses, gauges, and a cutting torch head. However, the hoses and gauges were found at the Rapid City pawn shop.

**3.** Items referred to in the affidavit but not in the search warrant included champagne, a PA system, and cigarettes, all of which were taken from the country club.

**4.** Charles testified that many of the items seized were taken only because Albright identified them as stolen.

ever, we reluctantly conclude that the specific language of the memorandum decision will suffice.

## ISSUE I

WHETHER THE TRIAL COURT ERRED BY DENYING DEFENDANT'S AMENDED MOTION TO EXCLUDE SEARCH WARRANT EVIDENCE DEALING WITH THE SEIZURE OF EVIDENCE BEYOND THE ITEMS NAMED IN THE SEARCH WARRANT.

Albright claims that items known to be stolen and suspicioned to be in Albright's house were not specifically enumerated in the search warrant, but yet were seized by the officers, and therefore such items should have been suppressed. State argues that the officers were legitimately on the premises pursuant to a valid search warrant and that the items seized, but not named in the warrant, were either in plain view, were of an incriminatory nature, or were voluntarily pointed out by Albright as being stolen.

Generally, when a search is conducted pursuant to a search warrant, " '... the officer making the search cannot seize property other than that which is specifically described in the warrant.' " *State v. Watkins*, 89 S.D. 661, 664, 237 N.W.2d 14, 16 (1975) (citations omitted). We have stated that "[a] suggested test of the existence of the requisite particularity is whether the warrant places a meaningful restriction on the objects to be seized ... such particularity requires that an officer does not have any discretion with regard to what is to be seized." *State v. Weiker*, 342 N.W.2d 7, 9 (S.D.1983) (citations omitted) *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1422, 79 L.Ed.2d 747 (1984). However, this court has recognized the plain view exception to the general rule. This exception arises "where a police officer while in the course of a lawful search pursuant to a valid search warrant *inadvertently* uncovers evidence of another crime. In such a case, the police officer may seize the evidence although it was not described in the warrant." *State v. Wellner*, 318 N.W.2d 324, 329 (S.D.1982)

(emphasis added) *citing State v. Larkin*, 87 S.D. 61, 64–5, 202 N.W.2d 862, 864 (1972); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Furthermore, *Wellner* requires that the original search "be directed in good faith toward finding objects described in the search warrant." *Wellner, supra* at 329. The basis for requiring such limiting language is the fear that an exception to the warrant requirement, such as the plain view doctrine, might be extended to something in the nature of an exploratory search. *See Coolidge, supra*. One commentator has suggested that "if the 'inadvertent discovery' limitation is to make any sense at all, it *must* at least mean that a discovery is inadvertent, without regard to the personal hopes or expectation of the officers lawfully within the premises, if there were not sufficient grounds to justify issuance of a search warrant for those objects." *See* 2 LaFave, Search & Seizure, § 6.7(c) at page 725 (2d ed. 1987).

Applying this exception to the facts in the case at bar, we conclude that the seizure of the items taken from Northern Hills was anything but inadvertent, as law enforcement officials had previously suspected Albright of taking such items and were aware that he had sold some of the other items. *Watkins, supra*. As stated earlier, at the motions hearing Charles testified that prior to executing the affidavit for search warrant he had information regarding the stolen Northern Hills property and knew that Albright was a suspect in that incident. Furthermore, Charles had a list of the property that had been taken from Northern Hills, including those items Albright had sold to the Rapid City pawn shop. Charles further believed that the shoe tread information gathered from both the Northern Hills and country club burglaries were similar. (In fact, shoes with the particular tread mark were seized from Albright's residence.) However, it should be observed that the authorities had no specific information that the property from Northern Hills was located in Albright's house.

In addition, when asked at trial what items the officers were looking for when they conducted the search, Charles replied "[w]hen we went in there, we were looking for items taken from the Spearfish Canyon golf club clubhouse, more fireworks and *also items taken from the Northern Hills Forest Products....*" The prosecutor further asked "Now, you indicated that some of the items you were looking for were some items regarding Northern Hills Forest Products sawmill?" Answer "Yes."

■ We conclude that Judge Moses did not err in refusing to suppress the omitted property stolen from the country club (e.g. champagne and PA system). A fair reading of the entire documentation leads us to the opinion that the omission was an oversight amounting, at worst, to excusable neglect.

On the other hand, it is obvious that the authorities, at the time of the search, had in mind items other than those taken from the country club. We conclude that the Northern Hills items should have been enumerated in the warrant and as to those items, it rose to the level of an "exploratory" search. We therefore hold that Judge Moses erred in not suppressing the items seized relating to Count III of the indictment.

■ In spite of the above ruling, we do not believe that reversal of the conviction on Count III is necessary. It must be noted that defendant was not charged or convicted for the *theft* of the specific property. Rather, he was charged and convicted of the offense of third-degree burglary, a violation of SDCL 22–32–8, which reads as follows: "Any person who enters or remains in an unoccupied structure, *with intent to commit any crime* therein, [in this case theft] is guilty of third degree burglary...." (Emphasis added.)

In order to sustain a conviction for third-degree burglary, State need not establish that a defendant stole specific property. Rather, State must prove that a person had an *intent to commit a crime,* (here, theft). Even disregarding the property seized in the search, State presented clear and unrefuted evidence that Albright sold some of

the stolen Northern Hills property at a pawn shop in Rapid City, which is certainly some strong evidence of theft. More important, Albright subsequently confessed to the burglaries (see Issue II below). We therefore determine that the evidence, which should have been suppressed, was cumulative. *State v. Davis,* 293 N.W.2d 885 (S.D.1980); *State v. Johnson,* 87 S.D. 43, 202 N.W.2d 132 (1972).

## ISSUE II

WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS HIS CONFESSIONS AND ADMISSIONS TO LAW ENFORCEMENT OFFICIALS.

Albright claims that the trial court should have suppressed (1) the statements he made to law enforcement officials during the execution of the search warrant on February 20, which statements revealed the stolen nature of the items seized, and (2) the confession he gave to Charles on February 21, 1986.

At the time the search warrant was executed, Albright was informed of his rights under *Miranda. State v. Adkins,* 88 S.D. 571, 225 N.W.2d 598 (S.D.1975). Albright testified at the motion hearing that he understood the search warrant and the *Miranda* rights that were read to him. At trial, however, Albright changed his testimony and stated that he did not fully understand the warrant.

It was factually disputed whether Albright originally requested an attorney. Judge Moses concluded (1) that "any statement made by the defendant at the time (of the search) was a result of his free and voluntary choice to do so," (2) that there was no interrogation or "functional equivalent" of interrogation at that time, and (3) that the February 21 confession was not tainted by the events which took place on February 20.

We find Albright's "functional equivalent to interrogation" argument to be meritless as the trial judge obviously resolved the disputed fact of whether Albright had

requested an attorney against the defendant. *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *State v. Janis,* 356 N.W.2d 916 (S.D.1984); *State v. Cody,* 293 N.W.2d 440 (S.D.1980). Additionally, Albright himself admits that he had been informed of the *Miranda* rights and understood them, thus indicative that the statements were voluntarily made. As there was no interrogation on February 20, none of the constitutional self-incrimination provisions are implicated. *Cody, supra.* As the February 20 statements were not improperly obtained, they obviously do not taint the February 21 confession.

Additionally, regarding the February 21 confession, Albright claims that the confession was induced by promises of leniency by Charles. Charles denies that promises of help were given in exchange for the confession.

■ The trial court resolved the conflict in the testimony against Albright. In making a determination on waiver of an accused's rights against self-incrimination, we must review the totality of the circumstances. *Janis, supra.* The State has the burden of proving beyond a reasonable doubt that Albright had voluntarily, knowingly, and intelligently waived his right against self-incrimination. *Janis, supra.* However, if the trial court finds the confession or incriminating statement was voluntary beyond a reasonable doubt, such a finding "is binding upon (the Supreme Court) unless we conclude from our review of the record that the finding is clearly erroneous." *Janis, supra* at 919.

■ Here, Albright has had prior experience in the legal system. His own testimony revealed that he understood his rights and his answers appeared to be appropriate to the questions. Unlike almost all cases involving improper inducements, there is no indication that there was any promise of leniency in terms of the charges or punishment. *See State v. Hodges,* 326 N.W.2d 345 (Iowa 1982).

Under all the circumstances, we do not find that the trial court's decision to deny Albright's request for suppression of his confession was clearly erroneous.

## III

## WHETHER THE TRIAL COURT ERRED IN SUSTAINING STATE'S OBJECTION TO A QUESTION REGARDING DEFENDANT'S MENTAL HEALTH TREATMENT.

Albright claims that the trial court erred when it sustained the State's objection to a question to Albright regarding his previous mental health treatment. Albright argues he had the right to present relevant evidence to the jury to help them determine the reliability of the confession.

During direct examination of Albright, the following testimony occurred.

Q Okay. Over the years, have you had some counseling or treatment for mental health problems?

A Yes. For mental health and for alcohol and drug abuse.

Q Okay. Where have you had your mental health treatment?

MR. BLOOMBERG: I'm going to object to this line of questioning as being irrelevant.

THE COURT: Sustained.

No further questioning regarding mental health was attempted by counsel.

■ We agree that questions of credibility in regard to confessions are for the jury and that "the requirement that the court make a pretrial voluntariness determination does not undercut the defendant's traditional prerogative to challenge the confession's reliability during the course of trial." *Crane v. Kentucky,* 476 U.S. 683, 687, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636, 643 (1986) (citations omitted). Once the trial court has determined that a confession is voluntary and admissible, the jury must determine the weight to be given to the confession and the truthfulness of the person relating the confession. *See State v. Aschmeller,* 87 S.D. 367, 209 N.W.2d 369 (1973).

■ From the above quoted direct examination of Albright, it is clear that the question called for irrelevant testimony, namely the places of Albright's prior mental health treatment. However, the objec-

tion, which was sustained by the trial court, went to "this line of questioning." Since there was no offer of proof or further record made to demonstrate the relevance, we are not certain whether the trial court was ruling as irrelevant the "line of questioning" dealing with the various *places* of Albright's prior mental health treatment, or whether it was ruling as irrelevant the entire issue of Albright's prior treatment and counseling for mental health and alcohol and drug abuse.

As stated earlier, the trial court's ruling was correct if its intent was to exclude the places of treatment. However, it may have erred if it was excluding the fact of and details concerning the actual mental health illness treatments. *State v. Winfrey*, 221 N.W.2d 269 (Iowa 1974); *State v. Fetters*, 202 N.W.2d 84 (Iowa 1972); *State v. Faught*, 254 Iowa 1124, 120 N.W.2d 426 (1963). (It must be remembered that the trial court did not prevent Albright from explaining his side of all of the circumstances surrounding his conduct and statements at the time of the search or his later confession to Deputy Charles. First, Albright did testify about his actions during the search. However, he was asked no questions about the confession on direct examination.)

Our next inquiry, then, is whether such claimed error would be prejudicial here.

As stated by Justice Sabers in *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987):

'Prejudicial error' is error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party

assigning it. *State v. Dokken*, 385 N.W.2d 493, 498 (S.D.1986); *State v. Reddington*, 80 S.D. 390, 396, 125 N.W. 2d 58, 62 (1963).... SDCL 23A-44-14 defines harmless error as '[a]ny error, defect, irregularity or variance which does not affect substantial rights[.]'

In *Michalek*, we followed the lead of the United States Supreme Court in *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) *cert. denied* 469 U.S. 1218, 105 S.Ct. 1200, 84 L.Ed.2d 343 (1985), which adopted a suggested inquiry that the appellate court must ask itself in reviewing error to determine its prejudicial affect, namely:

"Absent [the alleged error] ... is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?"

*Michalek, supra* at 819 *citing* 416 U.S. at 510-11, 103 S.Ct. at 1981, 76 L.Ed.2d at 107.

▇▇▇ We have asked that question of ourselves and answer it in the affirmative. From a review of the record, it is abundantly clear that the evidence against Albright was overwhelming. Considering all the facts and the instructions of the court[5] we are convinced beyond a reasonable doubt that the jury would have returned a verdict of guilty irrespective of the claimed error. Therefore, the claimed error was harmless.

Affirmed.

MORGAN and HENDERSON, JJ., concur.

WUEST, C.J., and SABERS, J., concur in result.

---

5. By its instructions, 12, 13, and 14, the trial court properly instructed the jury as to its obligations in considering any confessions or admissions of Albright.
Instruction 12 reads:
The guilt of a defendant may not be established alone by any confession or admission made by him outside of this trial. Before any person may be convicted of a criminal offense, there must be proof, independent of any such statement, that the crime in question was committed, but it is not necessary that such independent proof include proof as to the identity of the person by whom such offense was committed.
Instruction 13 after defining "statement," "admission," and "confession" advised the jury:

... You are the exclusive judges as to whether an admission or confession was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. It is for you to determine what weight, if any, to give to any purported admission or confession.
By its Instruction 14, the trial court admonished the jury that:
"Evidence of a claimed oral admission or confession of defendant ought to be viewed with caution and weighed with care."

SABERS, Justice (concurring in result).

I concur on issues II and III. I concur in result only on issue I because the admission of this stolen personal property was proper even though not listed on the search warrant. Albright's statements and conduct in pointing out the stolen goods to the officers constituted a waiver of his right to object to statements and evidence obtained pursuant to the search. *State v. Janis,* 321 N.W.2d 527 (S.D.1982).