Steven SATTER, Petitioner
and Appellant,

v.

Herman SOLEM, Respondent
and Appellee.

No. 15731.

Supreme Court of South Dakota.

Argued Nov. 17, 1987.

Decided April 20, 1988.

Rehearing Granted June 3, 1988.

**426**

Richard Braithwaite, Sioux Falls, for petitioner and appellant.

Janine Kern, Asst. Atty. Gen., Roger A. Tellinghuisen (on brief), Atty. Gen., Pierre, for respondent and appellee.

MORGAN, Justice.

Petitioner and appellant Steven Satter (Satter or petitioner), appeals from a judgment denying habeas corpus relief. We reverse and remand.

Satter was convicted by jury trial of two counts of murder on May 10, 1974, and was sentenced to serve two concurrent life sentences. Satter appealed that conviction, which was affirmed at 90 S.D. 485, 242 N.W.2d 149 (S.D.1976). Petitioner raises four issues on appeal.

(1) That admissions made to the sheriff without benefit of *Miranda* warnings were involuntary.

(2) That jury instruction No. 15 impermissibly shifted the burden of proving self-defense to the accused.

(3) That he received ineffective assistance of counsel.

(4) Satter, pro se, raises the issue of ineffective assistance of counsel, contending that Jury Instruction No. 5 was flawed because it did not contain all the elements of murder.

While incarcerated in the Codington County Jail because of probation violations involving area burglaries, without having given Satter *Miranda* warnings, petitioner was questioned by Codington County Sheriff Berg (Berg), concerning an anonymous phone tip Berg had received about the location of two bodies. Satter told the sheriff he knew about the bodies because the person who had murdered them had asked him to dispose of the bodies. He volunteered the name of the alleged murderer and the location of the bodies after, according to Satter, Berg promised their conversation was off the record. This conversation was never reduced to writing. At the habeas hearing, the sheriff did not recall having made such a promise. Prior to this interview with Berg, Satter had been interviewed on numerous occasions concerning local and out-of-state burglaries and had been Mirandized prior to each interview.

Following Satter's directions, the bodies were located and a DCI investigator was called in. Satter was given Miranda warnings at each interview thereafter. Satter agreed to a polygraph examination dealing specifically with the murders. Up to this point in time, he had not admitted committing the murders. Satter was Mirandized prior to the polygraph examination and before a post-polygraph examination inter-

view. Satter failed the polygraph and thereafter confessed to the murder of two acquaintances, but maintained his actions were in self-defense. His confession was consistent with that theory. The written confession signed by Satter contained a paragraph offering Satter a future polygraph and a promise that the State would not object to its introduction into evidence at trial. No further polygraphs concerning the murders were offered or given. Additional facts concerning the trial will be given as needed.

We first set forth the scope of our review. Since the remedy sought is in the nature of a collateral attack upon a final judgment, the scope of review is limited. *Goodroad v. Solem,* 406 N.W.2d 141 (S.D. 1987); *Everitt v. Solem,* 412 N.W.2d 119 (S.D.1987); SDCL 21–27–16.

'... [H]abeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights.'

*Goodroad,* 406 N.W.2d at 144 *quoting State ex rel Burns v. Erickson,* 80 S.D. 639, 645, 129 N.W.2d 712, 715 (1964). *See Goodroad, supra,* for a general review of the habeas corpus remedy. We recognized in *State ex rel Poach v. Sly,* 63 S.D. 162, 257 N.W. 113 (1934), that a constitutional violation in a criminal case may deprive the trial court of jurisdiction. *See, Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). ' "Further, we must bear in mind that in cases such as this, the burden of proof is upon the [petitioner]." ' *Goodroad* at 145 *citing Spirit Track v. State,* 272 N.W.2d 803, 804 (S.D.1978).

Petitioner first contends that his admissions "to Sheriff Berg were inadmissible because they were involuntary." Petitioner bases involuntariness on three grounds. First, a violation of his privilege against self-incrimination under the Fifth Amendment of the United States Constitution and Article VI, Section 9, of the South Dakota Constitution and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Second, Satter had earlier and repeatedly informed authorities that he was seeking to retain counsel, but none was made available to him during subsequent interviews. Third, that there was overreaching by authorities in the form of promised confidentiality concerning the admissions which were later used against him at trial.

The habeas court found that Satter voluntarily and knowingly made admissions to Sheriff Berg, notwithstanding the fact that he had not been given *Miranda* warnings, and that such inquiry was investigatory rather than accusatory. We may not upset the circuit court's factual findings unless they are clearly erroneous. SDCL 15–6–52(a); *Goodroad, supra; Spirit Track, supra; Cunningham v. Yankton Clinic, P.A.,* 262 N.W.2d 508 (S.D.1978).

In *Oregon v. Elstad,* 470 U.S. 298, 307, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222, 231 (1985), the court held that "[f]ailure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda.*" *See State v. Holland,* 346 N.W.2d 302 (S.D.1984); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[1] State admits that the petitioner did not receive warnings at this interview, but contends that he had been given warnings on several occasions prior to this interview. Sheriff Berg testified at trial that at this interview he "talked to Steve Satter reference to a number of burglaries that him and another fellow had been involved in. We talked about this for awhile, and at that time I asked him if he knew anything about two bodies that were supposed to be buried somewhere around the Watertown area."

---

1. The threshold question raised by *Miranda* is not whether the inquiry was investigatory rather than accusatory, but whether the interview was *custodial.* It was admitted at trial that petitioner was incarcerated at that time. Under similar circumstances in *Holland,* the State conceded that jail interviews were custodial interrogations.

The dissent suggests there was no crime under investigation when Berg questioned Satter. However, it is clear from the testimony of both Sheriff Berg and Officer DeWall that law enforcement agencies were aware of the disappearance of the deceased individuals. Law enforcement officials had already begun looking for two persons, or their bodies, when Berg received the anonymous phone call suggesting where the bodies could be found, and if not found, that Berg should talk to Satter.

■ In *Holland,* a strikingly similar situation, the defendant was in custody in an Oregon jail facing child abuse charges while at the same time there were second-degree murder and manslaughter charges pending in South Dakota. An Oregon official interviewed the defendant and read him his *Miranda* warnings concerning the Oregon charges. Defendant waived his constitutional rights with regard to the Oregon charges because he considered those to be ridiculous. Not long into the interview, the official abruptly and without warning changed the focus of the questioning from the Oregon charge to the South Dakota incident. We said in *Holland:*

> Under the circumstances of the abrupt change in focus of the interview, we find no voluntary or intelligent waiver by defendant of his rights. The record is clear that defendant waived his right to an attorney only for purposes of discussing the Oregon charges. When he waived his rights at that time, he never knew that the South Dakota incident would be raised. It is difficult to conceive how one can intelligently waive his right to counsel when he does not know the nature of the offense with which the major part of the interview will be concerned.

346 N.W.2d at 306. We held in *Holland,* that State failed to meet the heavy burden of showing an intelligent and knowing waiver of rights. We do not find the facts in this case to be dissimilar from *Holland,* and therefore hold that the prior *Miranda* warnings, not even related to the same interview, were not sufficient to advise defendant of his rights with regard to the murder charges. Thus, the admissions made to Sheriff Berg were involuntary and any evidence resulting therefrom could be subject to the Fruit of the Poisonous Tree doctrine. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We reverse the habeas court on this issue and remand for entry of judgment consistent with this opinion.

Because we reverse and remand on the issue of failure to properly Mirandize, we need not discuss the issues of request for counsel and of promised confidentiality. Nor need we discuss generally the issue of ineffective assistance of counsel. However, because the issue of the propriety of Instructions No. 5 and 15 may well come up on retrial, we deem it expedient to review them at this time in hopes of forestalling any issue on those instructions if given on retrial.

■ Petitioner argues, through counsel and pro se, that the two instructions were fatally flawed. Although, in a habeas corpus appeal, under our scope of review we will not ordinarily review jury instructions, we may review whether, under similar circumstances, a reasonably competent attorney exercising customary skills and diligent, would have objected so as to determine whether counsel's performance falls within the wide range of professional assistance required by the Sixth Amendment.[2]

■ Instruction No. 15, as given by the court, states:

### INSTRUCTION NO. 15

It is not required that the defendant shall produce a preponderance of the evi-

---

2. "'First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"
*Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987) (*quoting Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)).

dence in proving circumstances that justify the killings on his part, or that he prove such circumstances of justification to your satisfaction beyond a reasonable doubt. If, after consideration of the evidence, if any, touching the circumstances or question of justification on the part of the defendant for the shooting of the decedents, together with all of the other evidence in the case, you may have reasonable doubt as to whether the defendant did the shooting in the lawful defense of himself, when there was reasonable ground on his part to believe or to apprehend a design on the part of the decedents to him great bodily injury, and that there was imminent danger of such design being accomplished, you should acquit the defendant.

Petitioner argues that the instruction impermissibly shifts the burden of proving self-defense to defendant, thus denying him due process of law.

" '[A] State must prove every ingredient of an offense beyond reasonable doubt and ... may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.' " *Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344, 353 (1985) (*quoting Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281, 295 (1977). "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Franklin*, 471 U.S. at 314, 105 S.Ct. at 1971, 85 L.Ed.2d at 353–54. A permissive inference, unlike a mandatory presumption, suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion. *Franklin, supra.*

State contends that the instruction is a correct statement of the law. We agree. We believe the meaning, when considered with the other instructions, becomes clear. We approved an instruction using virtually identical language in *State v. Wilcox*, 48

S.D. 289, 204 N.W. 369 (1925), and therein we stated:

> While it is incumbent upon the defendant to show justification where his defense is 'self-defense,' this does not mean that he must prove his defense beyond a reasonable doubt, but only that *his evidence must be sufficient to create or leave in the minds of the jury a reasonable doubt as to whether he was justified* in taking the life of the deceased. (Emphasis added.)

48 S.D. at 297, 204 N.W. at 372. The language "leave in the minds of the jury a reasonable doubt" is another way of saying the defendant has the burden of persuasion when he raises an affirmative defense. This does not relieve the State of its burden of proving beyond a reasonable doubt that the justification was unwarranted.

The trial court's Instruction No. 5 stated:

## INSTRUCTION NO. 5

The essential elements of murder, the offense as charged in the information, each of which the State must prove beyond a reasonable doubt, are:

1. That the defendant at the time and place alleged in the information inflicted an injury or injuries upon the deceased from which the deceased died.

2. That such injury or injuries were caused by an act of the defendant imminently dangerous to others and evincing a depraved mind and without regard for human life.

 Satter, pro se, alleges that the instruction was deficient in that it did not contain the third element of the offense: "That the killing was without authority of law and without justification." When a defendant raises the affirmative defense of self-defense, it is incumbent upon the State to prove beyond a reasonable doubt that the killing was without authority of law. We might say that, in view of the other instructions given, particularly No. 15, it is harmless error. Since the case is being remanded, we suggest that the proper instruction be given in the event of retrial.

We reverse the judgment of the habeas court and remand with instructions to enter a writ with instructions to the State to either re-try the petitioner within a reasonable time or discharge him.

HENDERSON, J., concurs.

SABERS, J., concurs in result.

WUEST, C.J., and MILLER, J., dissent.

SABERS, Justice (concurring in result).

I agree with Justice Morgan that this case requires reversal and remand for new trial. However, I am convinced that the basis for reversal should be Issue III, not Issue I.

Defense counsel's conduct constituted ineffective assistance of counsel under the state and federal constitutions. Defense counsel should have objected to exhibits 21 and 49 because they contained highly incriminating material. Even if we accept the State's argument that counsel did not object because it was part of the trial strategy, no reasonably competent counsel would conclude that inclusion of the paragraph concerning the polygraph test would be helpful.

Assuming there is some defense strategy for allowing the jury to see portions of the statement, there is no conceivable reason the defense would want the jury to see the following paragraph:

"This statement is given with the understanding that a polygraph will be offered to me at a future date. Also that the State will not contest or object to the polygraph test being offered as evidence in court."

The jury could draw only one inference from that paragraph. As stated by present defense counsel, the only inference the jury could draw was:

Satter claims he killed in self defense; since he didn't object to Exhibit # 21, the state must have kept its promise and given him a polygraph; he could offer the test results without objection from the state; if he passed the exam he cer-

tainly would want us to know it; he didn't offer polygraph test results; ergo —he failed the polygraph and his testimony concerning self defense is not true. "That's dynamite. Even if there were some legitimate trial strategy in having the jury see the bulk of Exhibit # 21, any reasonably competent counsel would have asked to have the quoted paragraph excised—and that request would have been granted."

The effect of the polygraph paragraph *was* dynamite. It effectively *destroyed* the defendant's defense of self-defense. It constitutes ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and requires reversal, remand, and retrial. Upon remand and retrial, the Issue I statements from the defendant should be excluded unless found to be voluntary.

MILLER, Justice (dissenting).

I dissent.[1] Since I am convinced that the trial court findings were not clearly erroneous and not affected by any error of law, I am of the opinion that the judgment denying habeas corpus relief should be affirmed for the following reasons (their order does not reflect their relative merit ranking):

(1) *The Miranda warning was not necessary.*

At the time Sheriff Berg questioned Satter there was no known crime and Satter was not a suspect. Sheriff Berg was at the investigatory (not the accusatorial) stage of the proceedings. (Remember, too, that there is no claim or evidence of police misconduct or coercion.)

A *suspect* has a right to counsel at *any* custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) *reh'g denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). In *United States v. Gay*, 774 F.2d 368 (10th Cir. 1985), the court stated that "interrogation" for purposes of determining whether *Miranda* warnings are required, "is best viewed as an umbrella term encompassing

---

1. I do agree with the majority's analysis regarding Instructions 5 and 15.

words or actions that police should know are reasonably likely to elicit an incriminating response." *Id.* at 379. *See also United States v. Gonzalez–Mares,* 752 F.2d 1485 (9th Cir.1985) *cert. denied* 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985), providing that not every question posed in a custodial setting is equivalent to interrogation requiring *Miranda* warning.

The facts here indicate that Sheriff Berg had received an anonymous phone call advising him that there were bodies in a rock pile south of the town of Kranzburg, South Dakota. The caller told Sheriff Berg that if he could not find the bodies himself he should talk to Satter, who was then being held in jail on burglary charges. The caller indicated nothing further. Sheriff Berg searched the general area described by the caller, but was unable to find anything. He then went to the jail and talked to Satter about some burglaries that Satter and another man had allegedly committed. He then asked Satter "if he knew anything about two bodies that were supposed to be buried somewhere around the Watertown area."

In the circumstances of this case, Sheriff Berg was not required to give a *Miranda* warning. His inquiry regarding the location of alleged dead bodies was not accusatory and could not generally be said to lead to incriminating responses, and thus Sheriff Berg's question did not constitute "interrogation" invoking Satter's *Miranda* rights. *Gay, supra.* I also note and distinguish that the defendants in both *Elstad, infra* and *Holland, infra,* (cases heavily relied upon by the majority) were suspects and/or charged with a crime for which they were being interrogated. Whereas here, *Satter was not even a suspect for any crime* concerning the bodies. *See also* (8)(a) of this dissent.

**(2)** *Satter knew, understood and waived his Miranda rights.*

First, nowhere does Satter claim that at the time he gave the statement to Sheriff Berg he was not aware of his *Miranda* rights. Rather, he urges the technical omission of the exercise of giving the warning on April 1, 1973.

The determination of whether an "accused" has knowingly and voluntarily waived his *Miranda* rights depends on the facts of each case. *Stumes v. Solem,* 752 F.2d 317 (8th Cir.1985) *cert. denied* 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985) *citing Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). Although not referred to in the majority opinion, we set forth the test for waiver in *State v. Holland,* 346 N.W.2d 302, 305 (S.D.1984), stating:

> A defendant can waive his privilege against self-incrimination and the rights that go along with it, provided that the waiver is made voluntarily, knowingly and intelligently. *Miranda, supra.* To determine whether the waiver was made voluntarily, knowingly, and intelligently, we must look to the particular facts and circumstances surrounding the case, including the background experience, and conduct of the accused. (citations omitted) We must also consider whether the defendant knew of the nature of the offense for which he was charged or suspected....

*See also State v. Albright,* 418 N.W.2d 292 (S.D.1988); *Stumes, supra.*

Satter was no stranger to the criminal justice system. He had been convicted of four prior felonies. More importantly, however, at the time he gave the statement to Sheriff Berg he was in custody regarding burglary charges and probation violation (possession of a firearm) and had previously been Mirandized regarding those charges. In fact, he had met many times with law enforcement officers during March and was Mirandized before each interview. Satter's trial testimony reveals that he was articulate and intelligent. He clearly was aware of his right to remain silent, his right to counsel, etc. as regarded by *Miranda.*

Sheriff Berg did not *know* if any dead bodies existed. Satter clearly was unaware of any murder charge at the time he talked to the sheriff. Certainly Satter was not suspected of, nor charged with, any criminal offense relating to the bodies at that

time. More importantly, in *Colorado v. Spring*, 479 U.S. ——, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), the United States Supreme Court held that a suspect's awareness of all the crimes about which he *could* be questioned was irrelevant in determining the validity of the decision to waive the Fifth Amendment privilege against self-incrimination and, therefore, the failure to inform the defendant of the subject matter of an interrogation could not have affected his decision to waive the privilege.

For the above reasons, and all of the other reasons included herein,[2] it was not clearly erroneous for the trial court to conclude, after scrutinizing the totality of the circumstances, that Satter waived his Fifth Amendment rights, as the statements were voluntarily, knowingly and intelligently made. *State v. Bult*, 351 N.W.2d 731 (S.D. 1984); *Holland, supra* ; *Stumes, supra.*

(3) *The story Satter gave Sheriff Berg was an untrue fabrication.*

Satter did not give Sheriff Berg a statement implicating himself with the killings. Rather, he advised Sheriff Berg that a named individual from Minnesota had come to Watertown to collect a percentage of proceeds from some burglaries that had been committed by two other individuals, and had shot these two men after he learned that they had spent his share of the money. Satter advised Sheriff Berg that this individual offered him $1,000 to go out and burn up the two bodies with a cutting torch, but he indicated he could not bring himself to do so.

As stated earlier, nothing about that statement incriminated the defendant with the offense of murder, thereby eroding any fruit of the poisonous tree concepts. *See generally, Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

(4) *After being Mirandized, Satter latter told the same fabricated story to a DCI agent.*

Sheriff Berg contacted other law enforcement authorities after the bodies were

located. DCI Agent Delbert Peterson (Peterson) went to Watertown, advised Satter of his *Miranda* rights and was told a similar fabrication concerning an offer by persons from Minneapolis to dispose of the bodies.

First, I disagree with the majority's analysis of *Elstad, supra.* The majority quotes from *Elstad* as follows:

Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda.*

470 U.S. at 307, 105 S.Ct. at 1292, 84 L.Ed. 2d at 231.

The majority, however, overlooks or disregards other significant language in *Elstad*, holding that only *compelled* testimony is prohibited for the State's case-in-chief. The Court stated:

Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn ... solely on whether it is knowingly and voluntarily made.

470 U.S. at 309, 105 S.Ct. at 1293, 84 L.Ed. 2d at 232.

We must conclude that, absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice to waive or invoke his rights.

---

**2.** Specifically note the Fifth and Sixth Amendment right to counsel issues under (8)(a) of this

dissent.

470 S.Ct. at 314, 105 S.Ct. at 1296, 84 L.Ed.2d at 235.

Here, Satter was Mirandized many times regularly throughout March, 1973, and before the April 1 statement to Sheriff Berg. Satter was "an old hand" with the criminal justice system. He had visited with an attorney several times in March, 1973, but did not retain one. As stated earlier herein, Satter's trial testimony reveals that he was articulate and intelligent. Finally, after Satter posed the hypothetical question about the dead bodies to Sheriff Berg and was informed that if he had knowledge of their location he could be charged with *some* criminal offense, *he later voluntarily* returned to the subject of the location of the bodies after his discussion with Berg had turned to other topics. Thus, Satter was sufficiently warned before giving the April 1 statement and his rights were voluntarily waived and the same rationale applies to the statement to Peterson.

Furthermore, there has been no showing of police coercion. There is nothing in the record indicating any police misconduct or coercive tactics at the April 1, interview or at any other time. Neither Sheriff Berg nor Peterson employed physical or emotional pressure to elicit the statement from Satter. Nor was Satter worn down by improper interrogation tactics, lengthy questioning, trickery, or deceit. *See Colorado v. Spring, supra*; *Elstad, supra.* (See *Colorado v. Connelly*, 479 U.S. 157, ——, 107 S.Ct. 515, 523, 93 L.Ed.2d 473, 486 (1986), wherein it is stated that "[t]he sole concern of the Fifth Amendment, on which *Miranda* [is] based, is governmental coercion.") Therefore, any presumption of coercion was rebutted by State.

The giving of Satter's subsequent statement to Peterson, after appropriate *Miranda* advice (and the subsequent written Mirandized confessions), also supports the voluntary nature of Satter's statements. *Elstad*, 470 U.S. at 318, 105 S.Ct. at 1298, 84 L.Ed.2d at 238. Thus, to require a retrial simply by excluding the same statement previously given to Sheriff Berg would be an idle act.

Even if the April 1 statement would be inadmissible under *Elstad*, which I certainly do not concede, the admission in State's case-in-chief was *harmless error* due to Satter's subsequent statement to Peterson and confessions, which were voluntarily given after valid *Miranda* warnings. *Albright, supra.* (See discussion below.)

(5) *The subsequent statements and confessions were not fruit of any poisonous tree.*

I also disagree with majority's statement on page 5, stating: "... the admissions made to Sheriff Berg were involuntary and any evidence resulting therefrom could be subject to the Fruit of the Poisonous Tree Doctrine."

First, the trial court's finding of voluntariness and waiver, as stated earlier herein, is not clearly erroneous. Subsequent to the statements to Sheriff Berg and Peterson, Satter executed Mirandized written admissions of killing the victims. These subsequent statements and "Confession[s] cannot be 'fruit of the poisonous tree' because the tree itself [was] not poisonous." *Colorado v. Spring*, 479 U.S. at ——, 107 S.Ct. at 856, 93 L.Ed.2d at 964.

The majority overlooks or disregards the holding in *Elstad*, 470 U.S. at 309, 105 S.Ct. at 1293, 84 L.Ed.2d at 232, in which United States Supreme Court said:

> It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn ... solely on whether it is knowingly and voluntarily made. (Emphasis added.)

Since there is no doubt that the subsequent statement (to Peterson) and the written confessions were voluntarily made and appropriately allowed into evidence, the ad-

mission of the April 1 statements during the State's case-in-chief was, at worst, harmless error. "No further purpose is served by imputing 'taint' to subsequent statements obtained pursuant to a voluntary and knowing waiver." 470 U.S. at 318, 105 S.Ct. at 1298, 84 L.Ed.2d at 238. (See discussion in 8(b) of this dissent regarding alleged promise of confidentiality for the subsequent statements.) Finally, as *Elstad* noted, the subsequent confessions could have been utilized for impeachment purposes on cross-examination. *See also State v. Williamson*, 349 N.W.2d 645 (S.D.1984).

Therefore, the subsequent statements were not involuntary nor were they "fruit" of any "poisonous tree" under the clear holding of *Elstad, supra. See also Colorado v. Spring, supra.*

**(6)** *Satter did not confess to the killing until he failed the polygraph examination.*

During the course of the investigation, Satter was Mirandized approximately twenty times. He ultimately took a polygraph examination, which he failed. It was not until then that he admitted to killing the victims, asserting that he did so in self-defense. No statements prior to that time in any manner implicated him in the *killing* of the victims, but rather implicated him in *other* possible charges.

**(7)** *Self-defense was the real issue.*

Throughout the trial, Satter asserted that he shot the victims in self-defense after an argument. He and the victims had committed a number of burglaries together in South Dakota and Minnesota. Satter was angry with them because one of the victims had taken some nude pictures of Satter's sister. At no time did Satter assert that he did not shoot the victims, rather he claimed that he did so in self-defense. The jury heard all of the facts and

concluded that he had committed murder. *State v. Albright, supra.*

**(8)** *Other issues should be addressed.*

Because of its holding on one issue, the majority did not discuss the other issues which were raised by Satter. In my view we should discuss and dismiss those issues as not meritorious.

**(a)** *Request for Counsel*

Satter knew and understood his right to counsel and was negotiating with private counsel to represent him. At no time did he request to have an attorney with him when Sheriff Berg talked to him, even though it seems clear from the record that he understood his right. In my view, he waived his right to counsel. *Stumes, supra.* Furthermore, the admission of statements made by a criminal suspect before any formal charges or indictment has been issued does not violate the suspect's Sixth Amendment right to counsel because that right has not yet attached. *See generally Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) ("Incriminating statements pertaining to other crimes, as to which the Sixth Amendment has not yet attached are, of course, admissible at the trial of those offenses." 474 U.S. at 181, 106 S.Ct. at 490, 88 L.Ed.2d 499 fn. 16). Regarding a Fifth Amendment right to counsel, see *Espinoza v. Fairman*, 813 F.2d 117 (7th Cir.1987), *cert. denied Fairman v. Espinoza*, — U.S. —, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987). As stated earlier in this dissent, Satter waived his Fifth Amendment right to counsel on the burglary charges.[3] It is not a requirement to re-Mirandize for a different crime after securing a valid waiver on earlier charges. *Espinoza, supra citing Colorado v. Spring, supra.*

**(b)** *Promised Confidentiality*

Satter principally asserts that Sheriff Berg had promised that their conversation

---

**3.** The facts here are distinguishable from *Holland* wherein defendant, who was in an Oregon jail on Oregon charges, had *retained* South Dakota counsel for the South Dakota charge. Here, Satter had *not* retained counsel and

waived his right, nor had any formal murder charges been filed. *See Edwards v. Arizona, supra; Espinoza, supra citing Colorado v. Spring, supra.*

regarding the dead bodies would be confidential. Sheriff Berg did not recall having made any such assurance. The trial court resolved that conflict in favor of the State, and in my view such holding was not clearly erroneous. *Albright, supra.*

### (c) *Ineffective Assistance of Counsel*

After having reviewed the transcript of the habeas corpus hearing and the trial, I am convinced that Satter was not represented by ineffective counsel. Unfortunately, Attorney Hackett is no longer living to defend himself. In my view, he did a laudable job of representing Satter at trial and on appeal. I believe Satter's assertions of ineffective assistance of counsel totally lack merit. The United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), set forth the standard to employ when examining an ineffective assistance claim. A defendant claiming such must show

> that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed. 2d at 693.

Satter's principal argument is that Hackett failed to move to suppress the statements and confessions. Hackett did object at trial to the statement but used the confession to support the self-defense claim. This offer of Satter's written statements was a part of Satter's and Hackett's legitimate trial tactics and strategy to show that Satter killed in self-defense. It is not this court's function to second-guess the tactical decisions of counsel nor to substitute its own theory of defense. *Jibben v. State,* 343 N.W.2d 788 (S.D.1984).

Satter also argues that Hackett was deficient because he did not seek to excise a portion of his written confession which referred to another polygraph examination. First, we have no way to determine what, if any, impact that portion of the statement had upon the jury. Further, its admission clearly seems to coincide with the totality of Satter's and Hackett's overall strategy. Even if Hackett erred in failing to make such a motion, I am convinced that the oversight did not rise to the *Strickland* standards. As stated earlier, the total issue was self-defense and the jury simply did not buy it.

I conclude that Attorney Hackett's representation was anything but causal. Hackett raised proper objections, vigorouly presented the self-defense claim and preserved all meritorious issues.

I conclude by asserting that it would be a manifest injustice to require a retrial of this case. The defendant, after being properly advised of his rights, admitted to the shootings yet claimed that he did so in self-defense. Now after his attorney has died, he attempts to collaterally attack the conviction on a number of grounds which in my view are not meritorious.

The judgment denying habeas corpus relief should be affirmed.

I am authorized to state that WUEST, C.J., joins in this dissent.