426 N.W.2d 23 (1988)
In the Matter of T.J.E., Alleged Delinquent Child.
No. 15833.
Supreme Court of South Dakota.
Considered on Briefs January 15, 1988.
Decided July 13, 1988.
Roger A. Tellinghuisen, Atty. Gen., Thomas Harmon, Asst. Atty. Gen., Pierre, for appellee State of S.D.
Gwendolyn Laprath, Gregory, for appellant T.J.E.
WUEST, Chief Justice.

ACTION
T.J.E. appeals her adjudication and disposition as a juvenile delinquent. We reverse.

FACTS
T.J.E., age 11, entered a retail store during business hours with her aunt. While in the store, T.J.E. took and ate a piece of candy from a display and left with her aunt without paying for the candy. T.J.E. was stopped outside of the store by the manager and ultimately admitted to him that she had eaten a piece of candy without paying for it.
State subsequently filed a petition in the circuit court alleging T.J.E. to be a delinquent child. The petition alleged second degree burglary. After an adjudicatory hearing the circuit court sustained the allegations of second degree burglary.

DECISION
We find that the evidence presented by state during T.J.E.'s adjudicatory hearing was insufficient to sustain the allegations in its petition and, therefore, we deem it unnecessary to address the other issues raised by T.J.E. in her brief.
State alleged in its petition that T.J.E. committed the offense of second degree burglary in violation of SDCL 22-32-3:
Any person who enters or remains in an occupied structure with intent to commit any crime therein under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony.
(emphasis added).
During T.J.E.'s adjudicatory hearing, state had the burden of proving each element of this offense beyond a reasonable doubt. Matter of S.F.H.R., 292 N.W.2d 802, 803 (S.D.1980) citing In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It was necessary, therefore, for state to prove that T.J.E. either entered or remained in an occupied structure with the intent to commit a crime therein.

*24 Did T.J.E. enter the store with the intent to commit a crime therein?
We find no proof in the record that at the time T.J.E. entered the store with her aunt she had the intent to commit a crime inside. We decline to interpret the impulsive act of this 11 year old child in taking candy after entering the store as evincing an intent at the time of her entry to commit theft. This clearly distinguishes this case from our affirmance of a burglary conviction in State v. Shult, 380 N.W.2d 352 (S.D.1986), where the defendant took an item of merchandise from a convenience store. In Shult there was an admission by him that at the time he entered the store he had the specific intent to commit theft therein. There is no such evidence in the present case.

Did T.J.E. remain in the store with the intent to commit a crime therein?
The circuit court did find that T.J.E. remained in the store with the intent to commit theft, thereby committing second degree burglary (SDCL 22-32-3) by remaining in an occupied structure with the intent to commit a crime therein.
A literal reading of the word "remains" in the statute (SDCL 22-32-3) would support this finding and would end the need for further inquiry. However, where the literal meaning of a statute leads to absurd or unreasonable conclusions, ambiguity exists. Matter of Rev. of Driver License of Fischer, 395 N.W.2d 598, 600 (S.D.1986); Matter of Sales Tax Refund Applications, 298 N.W.2d 799, 803 (S.D.1980). To interpet the word "remains" in SDCL 22-32-3 to hold a person commits second degree burglary whenever he is present in an occupied structure with the intent to commit a crime therein would make every shoplifter a burglar. See Shult, 380 N.W.2d at 358 (Henderson, J., dissenting). It would make the commission of any crime indoors, no matter how severe, subject to a felony burglary charge. See SDCL 22-32-1; SDCL 22-32-3; SDCL 22-32-8; State v. Blair, 273 N.W.2d 187, 188 (S.D.1979) (Zastrow, J., dissenting). We do not believe the legislature intended such absurd results when it amended the burglary statutes in 1976. 1976 S.D. Laws ch. 158 §§ 31-1 through 32-3.
Because the history of our state burglary statutes makes reference to the state of California, we have previously looked to that state for guidance in interpretation of our own burglary provisions. Blair, supra, at 187. Therefore, we once again turn to California for assistance with our present inquiry. The statute defining the offense of burglary in California, unlike SDCL 22-32-3 (second degree burglary), does not contain the word "remains." Cal. Penal Code § 459 (West 1970 & Supp.1988). Nevertheless, the supreme court of that state has discussed the type of presence in a building or structure necessary for commission of burglary. People v. Gauze, 15 Cal.3d 709, 125 Cal.Rptr. 773, 775, 542 P.2d 1365, 1367 (1975). The California court has interpreted the law of burglary in that state as retaining the principle that burglary must be committed by a person who has no right to be in the building or structure burglarized. Gauze, 125 Cal.Rptr. at 775, 542 P.2d at 1367. We find this conclusion of particular significance in analysis of the "remains" element of second degree burglary (SDCL 22-32-3) in our own state.
To read the word "remains" in the second degree burglary statute (SDCL 22-32-3) to mean that a person can commit burglary when he is lawfully present in an occupied structure not only leads to the absurdities we have discussed but also contravenes the principle observed by the California Supreme Court that burglary must be committed by a person who has no right to be in the structure. Gauze, 125 Cal. Rptr. at 775, 542 P.2d at 1367. However, if we were to read the word "remains" as it is qualified in the statutes of eleven other states[*] to mean that a person can commit *25 second degree burglary (SDCL 22-32-3) when he is unlawfully present or present without authority in an occupied structure, it would avoid the possibility for absurdity and retain the principle that burglary must be committed by a person with no right to be in the structure (Gauze, 125 Cal.Rptr. at 775, 542 P.2d at 1367).
We are aware that construing the word "remains" in the second degree burglary statute (SDCL 22-32-3) to mean an unlawful presence in a structure may appear to be inconsistent with previous holdings of this court that an unlawful or unauthorized entry into a structure is not an element of third degree burglary (SDCL 22-32-8). Blair, 273 N.W.2d at 188. However, the case in which we reached this conclusion involved a burglary of a business place during business hours by a defendant who entered the business with the intent to commit a crime therein. Id. at 187. Where a person enters a business place open to the general public with the intent to commit a crime therein, he enters without invitation and is not one of the public invited or entitled to enter the structure. People v. Barry, 94 Cal. 481, 29 P. 1026, 1027 (1892). Relying on this premise, the California Supreme Court has reasoned that holding such a person subject to prosecution for burglary does not reflect abandonment of the principle that burglary must be committed by a person who has no right to be in the structure. Gauze, 125 Cal.Rptr. at 775, 542 P.2d at 1367. We find this reasoning persuasive and are satisfied that it resolves any perceived inconsistency between our conclusion herein and previous holdings of this court.
We conclude, therefore, that the word "remains" in the second degree burglary statute (SDCL 22-32-3) means to unlawfully remain in a structure. Therefore, second degree burglary was not committed in this case where T.J.E. entered an occupied structure and after entry, while lawfully remaining in the structure, formed the intent to commit an offense therein. This distinction between criminal intent at the point of entry and formation of such intent after entry while lawfully within a structure was noted long ago in People v. Brittain, 142 Cal. 8, 75 P. 314, 315 (1904):
[i]t would be an impeachment of the common sense of mankind to say that a thief who enters a store with intent to steal does so with the owner's consent or upon his invitation. It is true the thief must have clothes and food, and may enter a store to procure them; and if, after he enters, he changes his mind, and concludes to steal, and not purchase his supplies, it would be larceny. But if it be proven that he entered with intent to steal, the law will not, in the face of such proof, shield him from punishment as a burglar on the assumption that he has the consent and invitation of the proprietor to so enter.
(emphasis added).
We find that state failed to establish that T.J.E. either entered or unlawfully remained in an occupied structure with the intent to commit a crime therein. Therefore, the evidence was insufficient to sustain the allegations in state's delinquency petition. Accordingly, we reverse the circuit court's adjudication and disposition of T.J.E. as a juvenile delinquent.
MORGAN, SABERS and MILLER, JJ., concur.
HENDERSON, J., concurs specially.
HENDERSON, Justice (specially concurring).
SDCL 22-30A-17 defines petty theft and grand theft. It sets forth degrees of petty theft. Grand theft is over $200. Petty theft is $200 or less. Petty theft for $100 or more is in the first degree and is a Class 1 misdemeanor. Petty theft of less than $100 is in the second degree and is a Class 2 misdemeanor. Here, obviously, the shoplifting is a petty theft offense as evidenced by the language of SDCL 22-30A-17.
*26 If an eleven year old takes a chocolate Easter egg, a few days before Easter, and without paying for it, eats it, and walks out of the store, has he/she committed second-degree burglary under the statutes of South Dakota? SDCL 22-30A-17 (shoplifting) was not considered by the State. Using State v. Shult, also cited in the majority writing, wherein I dissented, the State and trial court seized upon, and employed, a second-degree burglary charge. My indictment of the amorphous burglary statute in this state is set forth in said dissenting opinion, so I shall not repeat it here,at length;[1] suffice it to say, the preposterous result witnessed in Tripp County by the prosecution of this little girl, was a type of horror/nonsensical situation envisioned in my dissent. At the risk of legal narcissism, I quote but a small part of my Shult dissent, 380 N.W.2d at 358:
This second-degree burglary statute has a sweep whereby any and all crimes in occupied structures are amalgamated together by the same punishment depending upon the whim of the prosecutor. Prosecutors must have some channels of discretion and restraint.
T.J.E. was found to be a delinquent child as she "commit[ted] the public offense of BURGLARY IN 2ND DEGREE ... in violation of SDCL 22-32-3 and SDCL 22-30A-1[.]" See Petition with Findings of Fact and Conclusions of Law herein. Thereupon, she was (after having been found to be a delinquent) placed upon probation with five conditions of probation. Such a finding and punishment (the five conditions were intended as a type of punishment) is contrary to common sense and justice. This prosecutor chose to prosecute under a felony, the child having eaten a chocolate Easter egg, rather than prosecuting for a Class 2 misdemeanor. Not only does it violate common sense, but in my opinion, it violates the Eighth Amendment to the United States Constitution which provides a guarantee against cruel and unusual punishment. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). No child should suffer such an adjudication upon his/her record for second-degree burglary by virtue of snitching a chocolate Easter egg and eating it without paying for it; nor, for that matter, be put under the mandate of a court with five conditions which govern the child's conduct for a period of three months. Granted that the trial court ordered that Imposition of Adjudication of Delinquency be suspended, nonetheless, as I have pointed out above, the child was determined, as a matter of law, to be a burglar. The maximum penalty for second-degree burglary in South Dakota is a maximum sentence of 15 years and a $15,000 fine (SDCL 22-6-1(5)). Based upon this selective prosecution by the prosecutor, the punishment is grossly disproportionate to the act and of such a degree that the determination against this child as a delinquent for having committed second-degree burglary, with probation conditions attached, is unconstitutional. Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). This adjudication afflicts a harm upon the child which is needless[2] and disproportionate to the act. This needless affliction, so burdensome for this little girl, does shock my conscience. See State v. Swallow, 405 N.W.2d 29 (S.D. 1987), for shock the conscience of the Court concept. As I have written in the past, one day in jail can be cruel. For a child to go through this type of proceeding and counseling and trips to a court services officer, can be humiliating, degrading, and self-defeating. In common language, a little girl should not have been treated this way. This was a de minimis act. See State v. McCann, 354 N.W.2d 202, 204 (S.D.1984). *27 This case should not have reached the circuit court and Supreme Court levels. It could have been treated in an informal setting.
This prosecution creates, within the community, an opportunity of political advantage for the prosecutor to be known as a tough prosecutor to enhance his image of convictions in the community. Question: How harmful is it to society to remove a candy chocolate egg from a store? See Standard 3-3.9, American Bar Association, Standards for Criminal Justice (2d ed. 1980). See also State v. Karpinski, 92 Wis.2d 599, 285 N.W.2d 729 (1979).
Furthermore, I note that the child made "incriminating statements" unto the Pamida store manager, i.e., she took the chocolate candy and ate it without paying for it. Later, a police officer was called and she then made, under question, the same admissions to the police officer. It should be noted that the little girl did not make any admission until she was asked three times if she took the candy, and she finally "confessed" to this dastardly deed when advised by the store manager that he had a video tape of her taking the chocolate Easter egg (video statement not true). Thus, it appears that under the totality of circumstances test, at least in juvenile cases in this state, this young, inexperienced girl should not have been inherently coerced. See State v. Caffrey, 332 N.W.2d 269 (S.D. 1983); State v. Lohnes, 324 N.W.2d 409 (S.D.1982). It is long settled law in the United States that the greatest care must be taken to make sure an alleged confession of a juvenile is voluntary. In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527, 561 (1967). This little girl did not know how to protect her rights. When she was confronted by this manager and police officer with accusations, legal process set in for her, long recognized by the United States Supreme Court and the South Dakota Supreme Court. She did not, in my opinion, voluntarily waive her Fifth Amendment rights by a knowing and intelligent relinquishment. She is entitled to additional protection, as a juvenile. See Lohnes, 324 N.W.2d at 414.
Therefore, I would reverse this adjudication that T.J.E. is a delinquent child, setting aside and holding for naught a finding that she committed the public offense of second-degree burglary. She should have, initially, been treated as a possible shoplifter with store manager and parent(s) having a conference. Given the decision by the store manager to coerce her by the video statement ploy and given the calling of a police officer, both of whom were making accusations, Easter egg eater or not, as a juvenile she is entitled to her constitutional rights in Tripp County, South Dakota. Prosecutors should use a prosecutorial function to a better advantage than displayed here. If I understand the facts correctly, T.J.E.'s adult relative offered to pay for the chocolate egg which T.J.E. consumed before the forces of the law were set in motion. It is difficult not to scoff at this type of justice and not to feel sorry for the little girl and her aunt who were caught up in the capricious law enforcement on a given day in Tripp County. Law, in the end, does have to make sense.
NOTES
[*] Ariz.Rev.Stat.Ann. §§ 13-1501(1), 13-1506, 13-1507 (1978); Colo.Rev.Stat. §§ 18-4-201(3), 18-4-202, 18-4-203 (1986); Conn.Gen.Stat. §§ 53a-100(b), 53a-101, 53a-102 (1987); Del.Code Ann. Tit. 11, §§ 824, 825, 826, 829(d) (1987); Ga.Code Ann. § 26-1601(a) (Harrison 1983); Ill.Ann. Stat. ch. 38, para. 19-1 (Smith-Hurd 1977); Iowa Code Ann. § 713.1 (West 1979); Ky.Rev. Stat.Ann. §§ 511.020, 511.030, 511.040, 511.090 (Michie/Bobbs-Merrill 1985); Minn.Stat.Ann. § 609.581(4)(c) (West 1987); Mont.Code Ann. § 45-6-204 (1987); Utah Code Ann. §§ 76-6-201(3), 76-6-202 (1985).
[1] Note, "Steal the Chicken at the Henhouse Door:" The South Dakota Burglary Statute, 25 S.D.L.Rev. 158 (1980), is a concise treatise on the burglary versus petty theft issue. Title of this article is spawned by a quote pertaining to the narrowing of Arkansas' once overly broad burglary statute. "For instance, entering a hen house to steal a chicken became a serious felony, while stealing a chicken at the hen house door was mere petit larceny." Supra, at 161.
[2] Could not the manager and the parent(s) arrived at a solution to (a) pay for the chocolate and (b) have the parents discipline the child at home? Would not some common sense have obviated all of these costly and time-consuming proceedings?