STATE of South Dakota, Plaintiff
and Appellee,

v.

Marvin OSTER, Jr., Defendant
and Appellant.

No. 17745.

Supreme Court of South Dakota.

Argued Oct. 7, 1992.

Decided Jan. 27, 1993.

Rehearing Denied Feb. 19, 1993.

Mark Barnett, Atty. Gen., Joan Boos Schueller, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Brad A. Schreiber of Quinn, Eiesland, Day & Barker, Belle Fourche, for defendant and appellant.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Appellant, Marvin J. Oster, Jr., was indicted by a grand jury in Butte County on April 25, 1991, for violation of SDCL 22-32-3: Second Degree Burglary. At a motion hearing, he was denied a motion to dismiss the indictment for insufficient indictment and failure to give *Miranda* warnings. A motion in limine was granted suppressing evidence of prior criminal convictions; however, a motion to suppress Oster's taped admissions was denied because of the voluntariness of the admissions.

Trial was held on September 19, 1991, with the jury finding Oster guilty of second degree burglary. On November 1, 1991, Oster was sentenced to five years in the South Dakota State Penitentiary. On November 22, 1991, Oster filed a timely notice of appeal to this Court raising the following issues:

I. Did the indictment sufficiently inform Oster of the charge against him?

II. Was Oster's confession the result of police coercion?

III. Did the trial court abuse its discretion by admitting Oster's taped statement into evidence?

IV. Did the trial court abuse its discretion by denying Oster's motion for mistrial?

V. Did the trial court properly instruct the jury on the law?

VI. Was there sufficient evidence of the corpus delicti to corroborate Oster's confession and sustain a conviction?

We reverse based upon our holding on Issue V.

## FACTS

In the early morning hours of April 13, 1991, Oster and his girlfriend left Deadwood after a night of gambling and began "cruising around" in a snowstorm near the rural community of Vale in Butte County, South Dakota. Oster eventually stuck his car in a ditch. The two spent the night in the car waiting for daybreak.

At approximately 6:15 a.m., Oster, leaving his girlfriend with the car, reached the home of Larry Vissia. As Oster stood at the door, he requested help in getting his car back on the road. Although the two had never met, Vissia invited him inside to wait while he put on his boots. While Vissia was in another room putting on his boots, he closed the door to prevent his dog from escaping and bothering Oster. As Oster waited in the kitchen area, he noticed Vissia's wallet sitting on a cupboard. He apparently picked it up, looked through it, and then decided to steal the $34.00 out of it. Thereafter, Vissia exited the bedroom, found a tow rope, and together they drove to Oster's car whereupon they successfully put it back on the road. Both parties then went their separate ways.

Within the next two hours, Vissia picked up his wallet and discovered that his cash and a check were missing. He called the Butte County Sheriff's office and reported a theft. Deputy Sheriff Pomrenke was assigned to investigate the case.

One day after Deputy Pomrenke's investigation which led him to Oster, he contacted Oster and asked him to meet him at the Sheriff's office after 5:00 p.m. After arriving, Oster and Deputy Pomrenke began a tape recorded discussion concerning Oster's actions on the day in question. Less than ten minutes later, Oster confessed to taking the money.

## DECISION

I. *The indictment was sufficient.*

Oster first alleges that his conviction should be overturned because the indictment was insufficient. For an indictment to be sufficient, it must state all the elements of the offense charged and fairly inform the defendant of the charge against him; and it must enable him to plead an acquittal of conviction in bar of future prosecutions for the same offense. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *State v. Younger,* 453 N.W.2d 834 (S.D.1990); *State v. Logue,* 372 N.W.2d 151 (S.D.1985).

Oster's indictment for second degree burglary stated:

Count I Second Degree Burglary; That on or about the 13th day of April, 1991, in the county of Butte, state of South Dakota, MARVIN OSTER, JR. did enter or remain in an occupied structure, to-wit: Larry Vissia residence, Vale, Butte County, South Dakota, with the intent to commit the crime of theft therein, in violation of SDCL 22–32–3; and, contrary to the statute in such case made and provided against the peace and dignity of the state of South Dakota.

This indictment is not cloaked in mystery. The first words inform Oster of the offense charged. The elements of this crime correspond with the statute for second degree burglary. SDCL 22–32–3, as amended in 1989, states:

Any person who enters an occupied structure with intent to commit any crime *other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor,* or remains in an occupied structure after forming the intent to commit any crime other than shoplifting as described in chapter 22–30A constituting a misdemeanor under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony.

This Court has consistently held that an indictment is generally sufficient if it employs the language of the statute or its equivalent. *Younger* at 840; *Logue* at 155; *State v. Bingen,* 326 N.W.2d 99 (S.D. 1982); *State v. Lange,* 82 S.D. 666, 152 N.W.2d 635 (1967). Inasmuch as the language of the indictment properly incorpo-

rates the statutory law of South Dakota, we find the indictment to be sufficient.

## II. *Oster's confession was voluntary beyond a reasonable doubt.*

██ During pre-trial motions, Oster sought to have his statements suppressed due to the failure of law enforcement officials to give *Miranda* warnings. The trial judge ruled that under *State v. Perkins,* 444 N.W.2d 34 (S.D.1989), the interrogation was not custodial, and thus the warnings were not required. Oster does not challenge this decision, but claims that the statements were involuntary, achieved by psychological coercion.

██ Under such a claim, State must prove beyond a reasonable doubt that incriminating statements or confessions were freely and voluntarily made. *State v. Corder,* 460 N.W.2d 733 (S.D.1990); *State v. Dickey,* 459 N.W.2d 445 (S.D.1990). The trial court must determine voluntariness through an examination of the totality of the circumstances. *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *State v. Albright,* 418 N.W.2d 292 (S.D.1988). Because the trial court found the confession to be voluntary, that finding is binding upon this Court unless, upon review, we conclude that such a finding is clearly erroneous. *State v. Jenner,* 451 N.W.2d 710, 716 (S.D.1990); *Albright* at 297.

In response to Deputy Pomrenke's request, Oster voluntarily met with Pomrenke shortly after 5:00 p.m. at the Sheriff's office. No one but the deputy was present. Oster was made aware of the nature of the visit and was handed a newspaper article about the crime when he arrived. Pomrenke and Oster then went to a private room to discuss Vissia's missing money.

Pomrenke began taping the interrogation by noting that the time was after 5:00, and that Oster did not have to talk and was free to leave. Oster freely acknowledged that he would stay.

After explaining that he wanted to get things cleared up because Vissia had identified Oster in a photo lineup and believed that he was guilty, Oster responded to questions freely. However, Pomrenke noticed inconsistencies in Oster's answers, and would rephrase questions. Several times Oster denied taking the money. About eight minutes after this interview began, Pomrenke asked whether Oster might have had an opportunity to steal the money. After responding yes, the deputy asked once more whether he stole the cash, whereupon Oster confessed and offered to repay Vissia.

After the deputy told Oster that the consequences would be decided by the court, he permitted Oster to leave. The entire taped interview lasted only ten minutes. Oster now argues that the use of the newspaper, the mention of the photo lineup, and the repeated questioning add up to psychological coercion and should be suppressed.

Oster had been contacted by telephone when asked to come to the Sheriff's office. Oster drove his own car to the office. Pomrenke then informed Oster that he did not have to stay, the door was open, and he was free to leave. No other police were present. Even after admitting to the crime, Oster was allowed to leave on his own. Absent any element of police overreaching, there is simply no basis for concluding that Oster has been deprived of due process. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The deputy knew Oster had been at Vissia's and thus suspected him of committing the crime. Oster voluntarily met with Pomrenke. After a less than grueling question and answer session, Oster blurted out a confession. As the facts indicate, Oster was not hot-boxed or in an ingenious cat and mouse game with television's famed Lieutenant Columbo. He confessed freely and candidly.

Oster has given this Court no reason to doubt the procedures of the Butte County Sheriff's Department or the decision of the lower court. Although we are at a loss as to why Oster suddenly confessed, we do conclude that the statements were voluntary and not the result of psychological

coercion or police overreaching. The lower court carefully considered the suppression issue and had benefit of an on-site review of testimony. We do not deem its findings as clearly erroneous.

III. *The trial court did not abuse its discretion by admitting Oster's taped statement into evidence.*

■ During the State's case, the prosecution sought to have this incriminating tape admitted into evidence. Oster objected on the grounds that a proper discovery request had been made pursuant to SDCL 23A–13–1 requesting "all written or recorded statements" of Oster. Although the State produced a *transcript* of the recording, the *tape* was never produced.

After the court sustained Oster's objection, State witness Pomrenke testified that the transcript was an accurate representation of the tape. The State immediately made a second offer on the tape. The trial court reversed its decision, but first permitted Oster to hear the tape outside the jury's presence.

■ Although a trial court's order for the production of evidence must be expeditiously carried out and obeyed, not every failure to produce evidence as ordered is prejudicial error. *State v. McKee*, 314 N.W.2d 866 (S.D.1982); *Marshall v. State*, 305 N.W.2d 838 (S.D.1981). The trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion. *Marnette v. Morgan*, 485 N.W.2d 595 (S.D. 1992). When a party fails to comply with a discovery request, the trial court looks to SDCL 23A–13–17 to provide a remedy:

If, at any time during the course of a proceeding, it is brought to the attention of a court that a party has failed to comply with an applicable discovery provision, the court *may* order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it *may* enter such other order as it deems just under the circumstances. The court *may* specify the time, place and manner of making the discovery and inspection

and *may* prescribe such terms and conditions as are just. (Emphasis added.)

Discovery statutes exist to eliminate trial by ambush. To be meaningful, discovery must be as far in advance as possible to permit the accused an opportunity to investigate the evidence which is damning to his case, or to discover evidence which is helpful to his cause. Trial courts must heed to the criminal discovery statutes lest disclosures be so tardy that defense counsel is denied adequate time to protect his client and prepare his case. *McKee* at 869 (Henderson, J., specially concurring).

■ Though Oster would have preferred the trial court to stand by its original ruling and prohibit the introduction of the tape, the trial court was also statutorily authorized to permit Oster to inspect the tape outside the jury's presence before admitting it into evidence. It did so. Under SDCL 23A–13–17, the trial court could have granted Oster a continuance had he so requested. Furthermore, the contents of the tape were already admissible evidence, via the transcript. Therefore, the trial court permitted the tape because it was a more accurate representation of the transcript. The remedy for nondisclosure of discoverable material is left to the sound discretion of the trial court. *McKee* at 869 (Henderson, J., specially concurring).

Whereas the transcript was admissible and Oster possessed a copy of the transcript and eventually heard the tape, *the State introduced no undisclosed testimony by using the recording.* In view of the lack of showing of any prejudice to Oster, we hold that the trial court did not abuse its discretion by admitting the tape into evidence.

IV. *The trial court did not abuse its discretion by denying the motion for mistrial.*

■ Prior to trial, Oster made a timely motion to suppress all evidence, testimony, or otherwise concerning his prior criminal convictions. Based on the fact that Oster would not testify, the trial court granted the motion. When Deputy Pomrenke testi-

fied for the State, the silence was broken as follows:

Q: Okay. Now, when you had that suspect in mind, what was the next thing that you did?

A: I put together a photo lineup of Marvin Oster.

Q: Okay. And just tell us briefly how you go about that?

A: *We take extra pictures of everybody that's booked in the Sheriff's office* and are placed either in a photo album; if we don't photo albums, we put them in the secretary's desk. And I go through the photos and pick out people that will look alike or look like somewhat to the person that was—that I have as a suspect. (Emphasis added).

Oster made no attempt to interrupt Pomrenke's remarks. He waited until Pomrenke completely explained his answer before calling for a mistrial. Regardless, the damage was done before the answer was completed, thus violating the suppression request. The State explained that it had no intention to publish information which was potentially prejudicial to Oster.

We find this excuse to be without merit. During the motions' hearing, the same exchange between the prosecution and Deputy Pomrenke occurred.

Q Okay. And did you have in your possession a photographic line-up?

A Yes, I did.

Q Where did the photographs come from that were placed into the line-up?

A I went through our mug books is what we call them; *we take an extra picture of every person that comes through the Sheriff's office and we put them in a book.* And then I went through and found pictures that had strong similarities. (Emphasis added.)

The State was well aware that the inference to prior convictions would surface. After denying the mistrial, the judge attempted to remedy the situation by admonishing the jury:

... The jury is to disregard any aspects of that testimony that may indicate that these photographs were taken in the sheriff's office ... the sheriff might have had possession of pictures of persons at a picnic which the sheriff's office held or for any other reason. There is no implication that there was any offense charged against any of the individuals in this line-up, and especially against Mr. Oster ... your recollection of the witness' testimony governs; not mine.

Although the trial court's intentions were well-intended, perhaps it only highlighted the error. Pomrenke stated that the photos used in identifying Oster at the scene of the crime were of "booked" people. The jury did not misconstrue "booked" to mean "persons at a picnic."

Essentially, the rules of evidence exist to protect the rights of the accused. It appears that twice in this trial, the State violated a pre-trial motion. Oster contends that this violation was prejudicial and should result in a mistrial. However, trial courts have broad discretion in granting a mistrial. The decision of the lower court will not be disturbed absent a clear abuse of discretion and an actual showing of prejudice. *State v. Bogenreif,* 465 N.W.2d 777 (S.D.1991); *State v. McDowell,* 391 N.W.2d 661 (S.D.1986).

The test for determining if the trial court abused its discretion is not whether this Court would have made an original like ruling, but whether we believe a judicial mind, in view of the law and circumstances, could have reasonably reached the same conclusion. *State v. Rufener,* 392 N.W.2d 424 (S.D.1986).

In determining whether an error is prejudicial, we must find that the error in all probability must have produced some effect upon the jury's verdict and was harmful to the substantial rights of an appellant. *State v. Blalack,* 434 N.W.2d 55, 58 (S.D.1988). After the objection and admonishment, no further references to prior convictions occurred. We express strong displeasure about attorneys who skirt around the rules of evidence and at-

tempt to prejudice the accused's constitutional right to the best possible defense. Despite the State's evidentiary violation, we are not convinced that Oster's substantial rights were unduly prejudiced by the testimony. As is proper in such a situation, the jury was instructed to ignore the remarks. We find that a like judicial mind could have reached the same conclusion; and thus, there was no abuse of discretion in denying the mistrial. By the import of Oster's confession and the corroboration of circumstantial evidence, proof of Oster's thieving was overwhelming. Thus, we hold that there was no prejudicial error. There is simply no question that Oster took advantage of Vissia by peacefully entering his home, after asking for help, and then thieving money from Vissia's wallet. *State v. Myers*, 464 N.W.2d 608, 610 (S.D.1990). Under *Myers*, we expressed that there must be "... an actual showing of prejudice." It does not exist.

### V. *The jury instructions were in error.*

█ Oster claims that the trial court failed to properly instruct the jury on the law of the case *because the instruction defining second degree burglary did not state that entry or remaining in the structure had to be unlawful.* To answer this, we must revisit this case: *In the Matter of T.J.E.*, 426 N.W.2d 23 (S.D.1988). T.J.E. was an eleven-year old girl who was in a retail store during business hours and, while in the store, ate a chocolate Easter egg, then left without paying for it. The State charged her under SDCL 22-32-3:

> Any person who enters or remains in an occupied structure with the intent to commit any crime therein under circumstances not amounting to first degree burglary, is guilty of second degree burglary ...

We interpreted "remains" to mean *unlawfully* remaining in an occupied structure. Therefore, we held that second degree burglary is not committed "where T.J.E. entered an occupied structure and *after* entry, while *lawfully* remaining in the structure, formed the intent to commit an offense therein."

Citing California authority, we acknowledged that "burglary must be committed by a person who has no right to be in the building or structure burglarized." *Matter of T.J.E.* at 24; *People v. Gauze*, 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365 (1975); *State v. Derby*, 462 N.W.2d 512 (S.D.1990). In response, the legislature of South Dakota amended the second-degree burglary statute to read:

> Any person who enters an occupied structure with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22-30A constituting a misdemeanor, or remains in an occupied structure after forming the intent to commit any crime other than shoplifting as described in chapter 22-30A constituting a misdemeanor under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony.

The revised statute does incorporate some of the remedies as noted in *Matter of T.J.E.*, 426 N.W.2d at 26 (Henderson, J., specially concurring). However, the statute still fails to remedy the problem that the commission of any crime indoors, no matter how severe, is subject to a felony burglary charge. *Id.* at 26. Furthermore, it does not state that the burglar must be one who has no right to be in the structure burglarized.

█ Thus, we come to Instruction #5, the subject of dispute. The trial court instructed the jury on the law as follows:

> The elements of the offense of second degree burglary, as charged in the Indictment, each of which the state must prove beyond a reasonable doubt are:
>
> (1) That the defendant at the time and place alleged in the Indictment entered or remained in a structure described as a house.
>
> (2) That said structure was an occupied structure.
>
> (3) That the defendant entered with the intent to commit a crime or remained therein after having formed the intent to commit a crime.

Although Oster did not object to this instruction, he did propose a substitute instruction. Failure of a court to correctly or fully instruct the jury is not reviewable unless an objection was made or a written instruction correctly stating the law was requested. *Frey v. Kouf,* 484 N.W.2d 864 (S.D.1992); *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114 (S.D.1977). Oster's proposed instruction was exactly the same except for inserting the term "unlawfully" where indicated:

(1) That the defendant at the time and place alleged in the indictment entered or *unlawfully* remained in a structure described as a house.

. . . .

(3) That the defendant entered with the intent to commit a crime or *unlawfully* remained therein after having formed the intent to commit a crime. (Emphasis added.)

Ordinarily, jury instructions are adequate, if when considered as a whole, they correctly state the law and inform the jury. *State v. Gillespie,* 445 N.W.2d 661 (S.D.1989). Although the trial court's instruction followed the wording of the statute, it did not incorporate applicable decisional law that was made known to the trial court by Oster. As this Court has held and indicated above, the accused must *unlawfully* remain. *Matter of T.J.E.,* 426 N.W.2d at 25. Oster was bid to come into Vissia's home; after this peaceful and invited entry, he spontaneously took the money from the wallet on the cupboard. We stand by our previous holding in *Matter of T.J.E.,* written by our former Chief Justice, Justice Wuest. We hold that because crucial wording was missing from the jury instruction, the trial court failed to accurately inform the jury of the law.

VI. *There was sufficient evidence to sustain a conviction.*

▇▇ At the close of the trial, the trial court properly instructed that an extra-judicial confession, standing alone, will not sustain a conviction. Proof, independent of the statement, must exist. *State v. Garza,* 337 N.W.2d 823 (S.D.1983); *State v. Best,* 89 S.D. 227, 232 N.W.2d 447 (1975). Oster contends that his taped confession to Deputy Pomrenke was the only piece of evidence connecting him to the corpus delicti. This is not accurate.

An extra-judicial confession can be corroborated by the fact that a loss occurred and the fact that someone's criminal act caused the loss. *Best* at 452. Vissia testified that he had $34.00 cash in his wallet when he placed it on the cupboard in his kitchen, that the money was gone the following day, and that Oster was the only other person in his home during the interim. Furthermore, Oster was alone in the room where the wallet was located and thus had opportunity. Although the evidence is circumstantial, we hold that it is sufficient to corroborate the confession of Oster.

CONCLUSION

We hold that the indictment was sufficient. The court did not err in finding the confession to be voluntary. There was no abuse of discretion in admitting the taped confession or denying the motion for mistrial. We hold that the jury instructions did not comport to the law in this state on second degree burglary, a crime upon which Oster was tried, thereby prejudicing his defense. For the record, Oster served approximately five months for this conviction and has since been paroled. We take judicial notice of the State Penitentiary's records under SDCL 19–10–2(2).

We reverse.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., concurs specially.

SABERS, J., dissents.

MILLER, Chief Justice (concurring specially).

This is a classic case of unfair prosecutorial over-charging. Under the facts presented, I conclude that the only possible offense Oster could have committed was second-degree petty theft (SDCL 22–30A–1 & –17) which at the time carried a maximum penalty of thirty days in the county jail and a $100 fine. SDCL 22–6–2.

In reality, Oster was convicted of stealing $34 from the wallet of a good samaritan. He received a five-year penitentiary sentence (the majority fails to note that three years of this was suspended).

Through his independent inquiry of penitentiary or parole board records, the majority author has learned that Oster served approximately five months of this sentence. That far exceeds the appropriate maximum thirty-day jail sentence which the correct charge would have carried.

SABERS, Justice (dissenting).

The trial court properly instructed on the current law and I vote to affirm.

Prior to 1989, SDCL 22–32–3 provided:

Any person who enters or remains in an occupied structure with intent to commit any crime therein under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony.

After this court's decision in *In re T.J.E.*, 426 N.W.2d 23 (S.D.1988) interpreting the word "remains" within the context of those facts * to mean "unlawfully remains," the legislature amended SDCL 22–32–3 to provide as follows:

Any person who enters an occupied structure with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, or *remains* in an occupied structure after forming the intent to commit any crime other than shoplifting as described in chapter 22–30A constituting a misdemeanor under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony. (Emphasis added.)

While the legislature could have amended SDCL 22–32–3 by inserting "unlawfully" in front of the word "remains", it chose instead to exempt shoplifting and retail theft from crimes encompassed within the statute. This leads to only one conclusion. Under the statute, as amended by the legislature in 1989, as to all crimes, other than shoplifting and retail theft, if a person remains, *lawfully or unlawfully*, in an occupied structure after forming the intent to commit any crime, the person is guilty of second degree burglary. To interpret the statute in any other manner is in direct conflict with the obvious intent of the legislature and erroneous.

The purpose of the legislative branch is to enact the laws. The purpose of the judicial branch is to interpret and enforce the laws. It is important to refresh our memories occasionally, lest we forget. We should affirm the trial court and this conviction under SDCL 22–32–3 as presently enacted.

---

* This court stated in *In re T.J.E.* that "[t]o interpret the word 'remains' in SDCL 22–32–3 to hold a person commits second degree burglary whenever he is present in an occupied structure with the intent to commit a crime therein would make every shoplifter a burglar." *In re T.J.E.*, 426 N.W.2d at 24 (citation omitted).