STATE of South Dakota, Plaintiff and Appellant,

v.

Jerry L. DAVIS, Defendant and Appellee.

No. 18310.

Supreme Court of South Dakota.

Considered on Briefs on Dec. 3, 1993.

Decided April 13, 1994.

Rehearing Denied May 6, 1994.

Mark Barnett, Atty. Gen., Charles D. McGuigan, Asst. Atty. Gen., Pierre, for plaintiff and appellant.

David R. Wurm of Wurm and Hood, Rapid City, for defendant and appellee.

WUEST, Justice

State appeals the trial court's issuance of a writ of error coram nobis vacating Jerry L. Davis's (Davis) conviction for second degree burglary. We reverse.

### FACTS

Early on the morning of August 1, 1992, Michael Graham (Graham) met Jerry Davis (Davis) and her sister, Cindy Vice (Vice) at a bar in Rapid City, South Dakota. Graham later gave Davis a ride to another sister's residence in a Rapid City trailer court. Graham was acquainted with one of the other residents of the trailer court and attended a party at that residence for a time. When he left the party, he again encountered Davis and Vice who had quarreled with their sister and needed a place to go. Graham invited the two to his residence and took them back to his home, stopping along the way to purchase some beer.

Graham was renting a room in a trailer from Richard Carlson (Carlson) and his wife. When Graham and the two ladies arrived at the Carlson trailer, Carlson's wife was up with the Carlsons' infant son. Graham invited Davis and Vice to sleep in the trailer for the night and went to bed. Carlson's wife and son later went to bed as well. Davis and Vice drank a few more beers and, in the course of their conversation, Davis mentioned she had seen Graham cash a check and that he, "had a bunch of money on him." The two also saw a large glass jar of change sitting in the living room where they were staying. Needing money to, "go out and continue drinking," Davis instructed Vice to dig the change out of the jar while she went into Graham's bedroom to find the money from the check he had cashed. Davis went into the bedroom and emerged a short time later with Graham's money. The two then departed the trailer.

Carlson awoke at about 7:00 a.m. the next morning and discovered the change missing from the jar in the living room. Carlson also discovered some missing cigarettes and a missing cap. Carlson attempted to wake Graham up and tell him about the missing money but Graham had apparently passed out from the effects of alcohol. When Graham woke up later that morning, he discovered $200 missing from his pants pocket and also found that some cigarettes and beer were missing.

Graham and Carlson made arrangements to meet some friends at a nearby bar. With their friends' support, they intended to go back to the trailer belonging to Davis' sister and confront Davis and Vice about the missing money. However, when Graham and Carlson arrived at the designated bar/meeting place, they found Davis and Vice sitting in the establishment in possession of some of the property taken from the trailer. Graham and Carlson notified the authorities and detained Davis and Vice until law enforcement arrived at the scene.

On October 8, 1992, state filed an information charging Davis with one count of second

degree burglary (SDCL 22–32–3). Davis filed a pre-trial motion to dismiss on the basis that she had not "unlawfully" remained at the Carlson residence for the purposes of committing theft and, therefore, did not commit burglary as this court defined its elements in *Matter of T.J.E.*, 426 N.W.2d 23 (S.D.1988). The motion was denied at a pre-trial motions hearing on October 1, 1992.

Davis's court trial was conducted on October 7, 1992. At the close of state's case, Davis indicated she would have no witnesses and moved for a judgment of acquittal on several grounds including state's failure to prove that she "unlawfully" remained in the Carlson trailer as required to establish burglary under *T.J.E., supra*. The motion was denied and the trial court found Davis guilty as charged. A judgment and sentence were entered on October 29, 1992. Davis was sentenced to five years in the state penitentiary and a fine of $500 plus costs and restitution in the amount of $284. The five year penitentiary sentence was suspended on a variety of conditions including Davis's confinement in the county jail for 180 days.

Davis filed a notice of appeal on November 23, 1992. However, on January 20, 1993, Davis made a motion to dismiss her appeal. In an affidavit supporting her motion, Davis stated that the motion was the product of her, "free, voluntary and informed decision." This Court granted the motion.

On March 29, 1993, Davis filed a petition for a writ of error coram nobis seeking to vacate her conviction. The petition was based upon this court's decision in *State v. Oster*, 495 N.W.2d 305 (S.D.1993) which was decided on January 27, 1993. Davis asserted that the trial court had misapplied the statute defining burglary:

> per the South Dakota Supreme Court opinion in *State v. Oster*, [495 N.W.2d 305] slip op. # 17745 (filed 1/27/93), which, on facts identical to those in [Davis's] case, reversed a 1991 conviction for Second Degree Burglary on the ground that the elements of the offense require that the entry or remaining be unlawful[.]

A hearing on Davis's petition was conducted on March 26, 1993. On March 29, 1993, the trial court entered its findings of fact, conclusions of law and order granting the petition. The trial court concluded that *Oster* applied retroactively, that it would have prevented entry of a burglary conviction against Davis and that Davis had no other remedy under the circumstances of her case. Accordingly, the order granting the writ vacated her conviction. State appeals.

## ISSUE

DID THE TRIAL COURT ERR IN GRANTING DAVIS'S APPLICATION FOR A WRIT OF ERROR CORAM NOBIS?

Coram nobis is an extraordinary writ of common law origin. It has been held that

> [t]he jurisdiction of a court to grant relief under it is of limited scope. Any proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise. Only where there are errors of fact of "the most fundamental kind, that is, such as to render the proceeding itself irregular and invalid," can redress be had. Relief will be granted only when circumstances compel such action "to achieve justice."

Generally, this extraordinary writ is only available to attack convictions involving collateral legal disadvantages which survive the satisfaction of a sentence. *More importantly, statutory remedies must be unavailable or inadequate before a petition for coram nobis relief can be granted.*

*Petition of Brockmueller*, 374 N.W.2d 135, 137 (S.D.1985) (citations omitted) (emphasis added). State contends the issuance of a writ of error coram nobis in this case was erroneous because Davis had an available statutory remedy for the trial court's error in its interpretation of the burglary statutes, i.e., a direct appeal of her conviction. We agree.

■ As *Brockmueller, supra* points out, generally, statutory remedies must be unavailable or inadequate before a petition for coram nobis relief will be granted. Given such a limitation, various authorities recognize that:

> a writ of coram nobis is limited to cases where no other remedy is provided by law.

Statutory remedies such as a motion for a new trial, motion to vacate a judgment, motion in arrest of judgment, motion to reargue, *appeal,* and motion to recall remittitur, have been regarded as materially abridging or largely superseding or supplanting the original office and functions of the writ of coram nobis as it was known to the common law. Thus, such a writ has been held not to be available where a proper remedy is afforded *by appeal* or ordinary writ of error, by a motion for a new trial, by a motion in arrest of judgment, or by a motion to withdraw a plea.

18 Am.Jur.2d *Coram Nobis* § 12 (1985) (emphasis added). *Accord,* 24 C.J.S. *Criminal Law* § 1619 (1989) (res judicata bars claims in post conviction relief proceedings that could have been raised or decided on direct appeal). *See also, Petition of Nilles,* 412 N.W.2d 116, 119 (S.D.1987) (Henderson, J., specially concurring) (coram nobis not an instrument of appeal).

█ Here, the very grounds Davis urged in her petition for a writ of error coram nobis were also raised in her pre-trial motion to dismiss and in her motion for a judgment of acquittal, i.e., that unlawfully remaining on the premises was a requisite element to sustain her conviction for burglary and the facts in this case fail to reflect that she remained on the premises unlawfully. Davis laid the necessary groundwork to appeal the denial of these motions and, thereby, possibly obtain relief from her conviction in a direct appeal. Yet, Davis, voluntarily dismissed that appeal as a result of a "voluntary and informed decision[.]" Thus, Davis failed to pursue the prescribed statutory remedy for the errors she urged in her petition for the writ of error coram nobis and, under the precedents cited above, the writ should have been denied.

Reversed.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON, J., concurs with writing.

SABERS, J., dissents.

HENDERSON, Justice (concurring).

In joining this opinion, the reader should note the difference between *Petition of Brockmueller,* 374 N.W.2d 135 (S.D.1985), and this case.

Brockmueller's first two DUI convictions were ruled void and vacated due to *Honomichl v. State,* 333 N.W.2d 797 (S.D.1983), a decision handed down *after* Brockmueller's third DUI conviction, which was enhanced to a Class 6 felony. Once the first two convictions were erased, Brockmueller had only one DUI conviction to his name, but was still being punished as if it was his third conviction. Because the recent conviction was valid and the statutory time to correct an illegal sentence had since passed, a writ of coram nobis was the only remedy available to eliminate the enhanced sentence.

Instanter, Davis moved to dismiss the second degree burglary charge, citing *Matter of T.J.E.,* 426 N.W.2d 23 (S.D.1988), because she had not "unlawfully" remained at the residence for purposes of committing theft. She now seeks the writ based on *State v. Oster,* 495 N.W.2d 305 (S.D.1993), a decision handed down *after* her conviction.

True, Davis could not have utilized *Oster* at her trial; however, *Oster* completely relied on *T.J.E.,* a legal precedent which Davis *did* utilize. The release of *Oster* is not a parallel to the release of *Honomichl.* As noted by the majority opinion, other remedies were available to Davis, including a direct appeal. Not so for Brockmueller. Coram nobis "exists to afford a remedy against injustice— when no other remedy is available." *Brockmueller,* 374 N.W.2d at 139 (Henderson, J., concurring specially). "Coram nobis cannot be invoked simply to relitigate the original case. It is not an instrument of appeal." *Petition of Nilles,* 412 N.W.2d 116, 119 (S.D. 1987) (Henderson, J., specially concurring). Hence, I am in complete agreement with the majority writing.

SABERS, Justice (dissenting).

While the majority opinion argues that the issuance of a writ of error coram nobis was in error because Davis *had* the statutory remedy of direct appeal available, this remedy is

no longer available and therefore, I would affirm the order. *See Brockmueller,* 374 N.W.2d 135 (affirming the order even though no post-conviction proceedings were initiated by Brockmueller). As this court stated in *Brockmueller,* "statutory remedies *must be unavailable* ... before a petition for coram nobis relief can be granted." *Id.* at 137 (emphasis added) (citations omitted).

> [I]t is apparent that no other statutory remedy *is* available to Brockmueller to vacate his invalid felony conviction. SDCL 23A–30–1 authorizes a court to arrest judgment for lack of jurisdiction over the offense charged, but only upon motion to the court made within ten days after the verdict. Brockmueller correctly argues that he could not be charged with the knowledge that approximately nine months subsequent to his felony conviction this court would hold that a court could not acquire jurisdiction over a DWI offense in the absence of an information.

*Id.* at 138 (emphasis added) (citation omitted).

As in *Brockmueller,* Davis cannot be charged with the knowledge that seven days after she made a motion to dismiss her appeal, this court would hold that "the accused must *unlawfully* remain" in an occupied structure. *Oster,* 495 N.W.2d at 311–12 (emphasis in original). *See Brockmueller,* 374 N.W.2d at 140 (Henderson, J., concurring specially).* If the word "remains" means "unlawfully remains" as the majority subsequently held in *Oster,* then Davis is entitled to have the benefit of that interpretation. *Id.* ("Events occurring after the judgment have been treated as within the ambit of coram nobis.") It doesn't make any sense for the majority to free Oster as a result of their interpretation but refuse to vacate Davis' conviction. As I stated in *Moeller v. Solem,* 395 N.W.2d 165 (S.D.1986), "Enough

is enough! Even the State has an interest in cutting through this red tape. This Court should grant a writ of error coram nobis in accordance with *Petition of Brockmueller,* 374 N.W.2d 135 (S.D.1985)." *Id.* at 166 (Sabers, J., concurring specially).

Because the remedy of appeal is not available to Davis, I would affirm, not reverse, the trial court. To allow this conviction to stand is an injustice of the first magnitude. *Brockmueller,* 374 N.W.2d at 138–39.

---

* As Justice Henderson stated in his writing:

> When Brockmueller was called to trial on the Part II Information (felony), he was in no position to call to the attention of the trial court a decision made by this Court in *Honomichl v. State,* 333 N.W.2d 797 (S.D.1983). This legal point is critical.... That the judgments, upon which the felony was predicated, would be later vacated due to jurisdictional defects, was a fact unknown to him at the time of entry

of his plea and without fault on his part. It was a mistake of fact on his part. This was also unknown to the trial court when the plea was accepted. If known to Brockmueller or the trial court, rendition of the felony judgment would not have taken place. Coram nobis therefore lies.

*Brockmueller,* 374 N.W.2d at 140 (citations omitted).